# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| JANICE D. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV616-098 |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Janice Roberts seeks judicial review of the Social Security Administration's denial of her application for Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II. BACKGROUND

Roberts, who was 53 years old when her SSI claim was denied, alleges disability beginning October 7, 2009. Tr. 29, 50-54. She has a limited (7th grade) education and past work "helping for brick laying," "off and on maid service," and "various housekeeping jobs." Tr. 28, 93. She does not recall whether she attended special education classes, and reports a history of drug and alcohol abuse starting at age 13. Tr. 228-29. She had a 2007 verbal IQ score of 67, performance IQ score of 84, and full scale IQ score of 73 (tr. 230) and a 2014 verbal comprehension index score of 72, perceptual reasoning index score of 69, and full scale IQ score of 68 (tr. 375). *See* tr. 22-23.

The ALJ ruled against her after a hearing. Tr. 6-8, 19-29. He found that Robert's borderline intellectual functioning, depression, anxiety, degenerative joint disease of the left knee, scoliosis, and hearing loss constituted severe impairments but did not meet or medically equal a Listing. Tr. 21-23. Based on the evidence of record, the ALJ found that she retained the RFC for light work, except that

> she can stand and walk up to six of eight hours and sit up to six
> of eight hours with normal breaks. [She] can no more than

3

occasionally stair and ramp climb and can never climb ropes, ladders, or scaffolds. [She] can no more than occasionally stoop, kneel, crouch, and crawl. [She] can no more than occasionally perform overhead work. [She] must avoid loud background noise and her work should be limited to simple, routine, and repetitive tasks. Her work should involve only simple, work-related decisions with few, if any, workplace changes and she can have no more than occasional interaction with co-workers and supervision, and no public interaction.

Tr. 23-24.

Plaintiff, he determined, had no past relevant work but could perform the requirements of work as an assembler, either light or sedentary exertion, and both with an SVP[2] of 2. Tr. 27-28. Hence, Roberts was not disabled. Tr. 45. She disagrees, arguing that the ALJ erred in his evaluation of her mental functioning. Docs. 24 & 27.

## III. ANALYSIS

Plaintiff argues that the ALJ erred by finding her borderline intellectual functioning did not meet or equal Listing 12.05C. To meet Listing 12.05C,

> a "claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; *and* (3) have manifested deficits in adaptive behavior before age 22." These requirements are referred to as the listing's "diagnostic

---

[2] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

4

criteria." *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability]."). In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *See id.* § 12.05. Under paragraph C, the only paragraph at issue here, a claimant must show that [she] has both "[a] valid, verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x. 908, 910-911 (11th Cir. 2015) (internal cite omitted); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified" requirements -- "[a]n impairment that manifests only some . . . no matter how severely, does not qualify.").

A sub-70 IQ score triggers a rebuttable presumption of intellectual disability. *Frame*, 596 F. App'x. at 911; *Cody v. Colvin*, 2015 WL 5162280 at * 3 (S.D. Ga. Sept. 2, 2015); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00 ("Standardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A."). However, "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental

history and the degree of functional limitation." *Id.* Furthermore, when "considering the validity of a test result, [the ALJ] should note and resolve any discrepancies between formal test results and the individual's customary behavior and daily activities." *Id.* *See Hodges v. Barhnart*, 276 F.3d 1265, 1269 (11th Cir. 2011) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ considered the severity of Roberts' intellectual impairments at steps two and three of the sequential evaluation. Tr. 21-23. He referenced the psychological testing administered in 2007 and 2014, noting that they were not consistently sub-70 (full scale scores of, respectively, 73 versus 68, and verbal IQ scores of 72 versus 67). Tr. 23. He also noted that the scores were marred by Roberts' failure to

6

wear her glasses and her poor effort on more challenging tasks, as well as her understatement of her drug and alcohol abuse. *Id.* Though plaintiff argues that the ALJ was required to accept her lowest IQ scores as *per se* evidence of her intellectual disability, ALJs are not required to find a claimant met Listing 12.05C based solely on the results of an IQ test. *Lowery*, 979 F.2d at 837; *Popp*, 779 F.2d at 1500. They must "examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Id.*; 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(6)(a).

As the ALJ here observed, plaintiff's IQ scores were not consistently below 70 (tr. 23; *see also* tr. 230 & 375) and were further undermined by the examining psychiatrists' observations about external impairments to plaintiff's performance (*i.e.*, poor hearing and failing to wear her glasses in 2007) and lack of persistence (*i.e.*, giving up too easily before attempting some test items in 2014). Tr. 23; *see also* tr. 231, 375-76 (noting that after encouragement, she would *sometimes* raise her level of effort). The ALJ also properly noted that plaintiff's less-than forthcoming report of her alcohol and drug abuse history undermined the credit given to her "forthcoming" performance at testing. Tr. 23; *see also*

7

tr. 77, 228-29, 373.

Moreover, no medical source has ever opined that plaintiff met or equaled Listing-level intellectual disability. Both examining psychologists diagnosed her with borderline intellectual functioning and opined that she is capable of performing simple work (tr. 231-32 (2007 consultative examiner), 376-77 (2014 consultative examiner)). Even her treating physician opined that she had no more than slight difficulties in mental and social functioning (tr. 294). *See also* tr. 241-42, 250, 255. Though Roberts complains that the Commissioner has inconsistently argued this position in other districts and should be restrained to one position on the matter, here in the Eleventh Circuit a diagnosis of borderline intellectual functioning "is mutually exclusive of mental retardation." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984-85 (11th Cir. 2013) (physicians' assessment that claimant had borderline intellectual functioning rather than mild mental retardation supported finding that claimant did not meet Listing 12.05); *Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 768-69 (11th Cir. 2012) (a diagnosis of borderline intellectual functioning "is mutually exclusive of mental retardation"); *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th

8

Cir. 2012) (diagnosis of borderline intellectual functioning does not meet the requirements of Listing 12.05).

Even were the Court to accept plaintiff's inconsistent IQ scores as qualifying sub-70 scores under 12.05C, the record does not support a finding of deficits of adaptive functioning. *Hickel*, 539 F. App'x at 983-84 ("a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."). As the ALJ noted, plaintiff's documented ability to perform significant activities of daily living, socialize, and concentrate simply do not support a finding of any deficit in adaptive functioning. Tr. 22 (noting, in 12.05B analysis, that plaintiff has no more than mild restrictions in her activities of daily living; moderate difficulties with social functioning and concentration, persistence, and pace; and no episodes of decompensation); *see Hickel*, 539 F. App'x at 984-85; *Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007). She has no difficulties with self-care, chores, or staying by herself for extended periods of time, and no difficulty sticking to her normal daily routine. Tr. 374. She does not read, but can maintain attention enough to watch television and care for pets. *Id*. She has problematic familial

9

relationships, but no difficulty dealing with strangers. *Id.* She can shop for her own food and clothing and manage her own financial matters. Tr. 232.

Indeed, in Roberts' disability application, she did not report having *any* mental impairment affecting her ability to work -- she claimed inability to work due only to her postural limitations and back and leg pain. Tr. 92; *see also* tr. 137-39 & 159-60 (2010 & 2014 appeals for reconsideration reporting worsening physical impairments, anxiety, and depression but noting *no* intellectual deficits); tr. 166-67 (counsel's prehearing memorandum noting that Roberts' condition "does not appear to meet or equal a Listing"). Plaintiff also reported that she quit working twenty years ago because it had become "physically taxing" and that she was unable to now work due to "chronic leg and back pain" -- *not* mental difficulties. Tr. 373; *see also* tr. 228 (plaintiff reported to examining psychologist that she quit school at seventh grade due to *hearing* issues). Her partner "Tony" reported that Roberts had been fired from a cleaning job for insubordination and a "bad attitude," *not* for intellectual deficits. Tr. 374; *see also id.* (reporting that while her back and knee pain, constant headaches, and mild illiteracy impacted her ability to work, plaintiff's

main difficulty was her emotional and behavioral issues).

Having reviewed the evidence and the ALJ's discussion, the Court finds no error in the ALJ's step three assessment of Roberts' intellectual functioning. Substantial evidence supports the ALJ's finding, based on an extensive review of the record, that plaintiff did not satisfy the severity criteria (*both* a valid sub-70 IQ score *and* deficits in adaptive functioning) of Listing 12.05C. *Perkins*, 553 F. App'x at 873; *Harris*, 330 F. App'x at 815.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __19th__ day of January, 2017.

/s/ G. R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA